IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:20-CV-00100-MR-DSC

| | |
|---|---|
| HEATHER KEARNEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WESTERN CAROLINA UNIVERSITY and THE UNIVERSITY OF NORTH CAROLINA, | ) ) ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on "Defendants' Motion to Dismiss Plaintiff's Amended Complaint" (document #19) and the parties' briefs and exhibits.

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motion be <u>granted</u> as discussed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Heather Kearney brings this action against Western Carolina University and the University of North Carolina for gender discrimination and retaliation in violation of Title VII and Title IX.

Accepting the factual allegations of the Amended Complaint as true, on May 16, 2019, Western Carolina University hired Kearney as the head coach of its women's basketball team. Kearney previously served as an assistant coach at Appalachian State University among other

college coaching positions. WCU athletic director Randy Eaton negotiated a five-year contract with Kearney. Under UNC Policy Manual § 1100.3, the WCU Board of Trustees must approve the contract. This approval process is usually a formality. Kearney and AD Eaton signed a one-year contract while awaiting Board approval for the five-year contract. Kearney hired Darcie Vincent, the former head coach at ASU, as an assistant. Kearney had served as an assistant coach at ASU under Vincent.

Prior to the Trustees review of the pending contract, a group of former ASU players sent a letter to WCU officials alleging that Kearney targeted, intimidated, and bullied them. AD Eaton and WCU in-house counsel investigated the complaints. At that time, Kearney had met all of WCU's expectations. No WCU player had made a complaint against her. After investigating, AD Eaton and WCU in-house counsel recommended to the Board that Kearney's contract be approved.

Kearney informed WCU that these former ASU players had issues with her gender and sexual orientation. Her legal counsel advised WCU and the Board that these complaints were based upon gender stereotypes. Kearney's legal counsel also requested a full investigation into the complaints before the Board made any final decision. Kearney's five-year contract was not approved. The Board terminated her one-year contract on June 21, 2019.

On December 4, 2020, Kearney filed her Amended Complaint alleging gender discrimination and retaliation in violation of Title VII and Title IX. Defendants filed the instant Motion to Dismiss on December 18, 2020 pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6).

## II. STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs.,

Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true); see also Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke v. Williams, 490 U.S. at 328; see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 F. App'x 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

### III. DISCUSSION

A. **Gender Discrimination**

Title IX provides a private right of action for gender discrimination by educational institutions receiving federal funds. See Preston v. Virginia ex rel. New River Cmty. Coll., 31 F.3d 203, 205 – 206 (4th Cir. 1994). When evaluating a Title IX claim, courts will apply the same standards used when evaluating a Title VII claim. Id. at 207.

To establish a gender discrimination claim, a plaintiff "must show that (1) she is a member of a protected class, (2) she suffered adverse employment action, (3) her performance met her employer's legitimate expectations at the time of the adverse employment action, and (4) the action occurred under circumstances permitting a reasonable inference of sex discrimination". Boney v. Trs. Of Cape Fear Cmty. Coll., 366 F.Supp.3d 756, 764 (E.D.N.C. Mar. 5, 2019) (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc), abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013). "The ultimate question in every employment discrimination case . . . is whether the plaintiff was the victim of intentional discrimination." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 152 (2000). An employer discriminates against a person in violation of Title VII when it "fir[es] the person for actions or attributes it would tolerate in an individual of another sex[.]" Bostock v. Clayton Cnty., Georgia, 140 S.Ct. 1731, 1740 (2020). An employer cannot initiate an adverse employment action if it is "motivated by stereotypical notions about women's proper deportment." Price Waterhouse v. Hopkins, 490 U.S. 228, 256 (1998).

Plaintiff's Amended Complaint is based almost entirely on conclusory statements as well as the assumption that the former ASU players were motivated by gender stereotype bias and that by firing Plaintiff, Defendants acted upon the same bias. For example, the Amended Complaint alleges:

> 57. Complaints about the behavior of Coach Kearney and her assistant were created in part because of gendered socialization and in part because of the differential gendered expectations placed on them as female coaches.
>
> 59. If any complaints about Coach Kearney or her assistant were the result of gender differences in how athletes complain or gender stereotypes, that cannot form a basis to evaluate or terminate them from their employment.

> 118. Given that is typical for student athletes to complain about their coaches, it is likely that these long-term male coaches have received student-athlete complaints, yet they were not investigated . . . in stark contrast to Coach Kearney.
>
> 119. Given the tenure of this group of long-term male coaches, each was permitted to coach their athletes, manage their programs, and dismiss athletes if necessary, and yet none of them have been terminated regardless of the number or seriousness of student-athlete complaints received concerning their coaching.
>
> 127. Other allegations appeared to be specific, but were the product of gender stereotypes and the operation that affects the perception of behavior, the interpretation of that behavior, and even the discussion or transmission of that behavior between student athletes, parents, and to the administration.

Doc. 18, ¶ 57, 118-119. The bulk of the Amended Complaint details theory about the alleged effects of gender stereotyping. Plaintiff fails to allege well pleaded facts to support a plausible claim of discrimination.

For those and the other reasons stated in Defendants' brief, the undersigned respectfully recommends that Defendants' Motion to Dismiss Plaintiff's discrimination claim be granted.

**B. <u>Retaliation</u>**

For a claim of retaliation to survive a motion to dismiss, the plaintiff must "allege that they engaged in protected activity under Title IX, and . . . that – as a result of their protected activity – they suffered an adverse action attributable to the defendant educational institution." <u>Feminist Majority Found. v. Hurley</u>, 911 F.3d 674, 694 (4th Cir. 2018). Protected activities such as "[c]omplaints to supervisory or management employees concerning harassment or discriminatory treatment as well as informal complaints, filing of internal grievances, and complaints to an agency are included within the definition of protected activity." <u>Greer v. Univ. of S.C.</u>, No. 3:10-1390-MBS-JRM, 2012 U.S. Dist. LEXIS 15307, at *34-35 n.8 (D.S.C. Jan. 20, 2012), adopted <u>Greer v. Univ. of S.C.</u>, 3:10-1390-MBS-JRM, 2012 U.S. Dist. LEXIS 15303 (D.S.C. Feb. 8, 2012) (citing

Warren v. Halstead Indus., Inc., 802 F.2d 746, cert. denied, 487 U.S. 1218, 101 L. Ed. 2d 907 (1988); Mitchell v. Baldrige, 759 F.2d 80, 245 U.S. App. D.C. 60 (D.C. Cir. 1985)).

Plaintiff contends that she engaged in protected activity when her legal counsel advised WCU and the Board that the former players' complaints were motivated by their implicit bias against her. Plaintiff never made a formal or informal complaint. Her counsel merely responded to complaints made against her. Plaintiff has failed to show that she engaged in protected activity and her claim for retaliation under Title VII and Title IX fails.

For those and the other reasons stated in Defendant's briefs, the undersigned respectfully recommends that Defendants' Motion to Dismiss Plaintiff's retaliation claim be granted.

## V. **RECOMMENDATION**

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendants' Motion to Dismiss Plaintiff's Amended Complaint" (document #19) be **GRANTED**.

## IV. **NOTICE OF APPEAL RIGHTS**

The parties are hereby advised that pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same.  Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989).   Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316;

Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel and to the Honorable Martin Reidinger.

**SO ORDERED AND RECOMMENDED**.

Signed: February 22, 2021

David S. Cayer
United States Magistrate Judge